2012R000036/mam

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA      :      Hon.

           v.      :      Criminal Number: 18- *cr-179-wJH,*

JERMAINE GRANT and      :
LINCOLN WARRINGTON
                                18 U.S.C. §§ 371 and 2
                                26 U.S.C. § 7201

## **I N D I C T M E N T**

The Grand Jury in and for the District of New Jersey, sitting at Newark,

charges as follows:

## **COUNT ONE**
### **(Conspiracy to Defraud the United States)**

### **Introduction**

1.     At all times relevant to this Indictment:

     a.     The Israelite Church of God and Jesus Christ ("ICGJC") was

a tax-exempt religious organization headquartered in New York.   The ICGJC

maintained approximately nineteen chapters located throughout the United

States.   The ICGJC collected and received money for religious purposes from

its members, and this money and property belonged to the ICGJC.

     b.     Defendant JERMAINE GRANT ("GRANT"), a resident of

Hackensack, New Jersey, was the leader of the ICGJC.   In addition, GRANT

was fifty percent (50%) owner of Black Icon Entertainment ("BIE"), a purported

for-profit entertainment company with offices in Hackensack, New Jersey, New

York, New York, Beverly Hills, California, and elsewhere.

      c.     Defendant LINCOLN WARRINGTON ("WARRINGTON"), a resident of New Jersey, was a high-ranking treasurer for the ICGJC.   In this position, WARRINGTON was the primary signatory on the ICGJC's bank accounts, and he conducted financial transactions on behalf of the ICGJC. WARRINGTON was also a fifty percent (50%) owner of BIE.   In this position with BIE, WARRINGTON was the primary signatory on BIE's bank accounts, and he conducted financial transactions on behalf of BIE.

### The Conspiracy

2.    From in or about January 2007 through in or about April 2016, in Bergen County, in the District of New Jersey and elsewhere, defendants

JERMAINE GRANT and
LINCOLN WARRINGTON

did knowingly and willfully conspire and agree with each other and others, known and unknown to the Grand Jury, to defraud the United States by impeding, impairing, obstructing, and defeating the lawful governmental functions of the Internal Revenue Service of the Department of the Treasury ("IRS") to ascertain, compute, assess, and collect income taxes.

### Object of the Conspiracy

3.    The object of the conspiracy was for GRANT, WARRINGTON, and their co-conspirators to conceal from the IRS a substantial amount of taxable income that GRANT had obtained from the ICGJC by (a) diverting money and property belonging to the ICGJC and its members to BIE through fraudulent

2

and sham financial transactions; (b) diverting and taking money belonging to the ICGJC and its members for GRANT's own personal use and benefit and the benefit of his family members; and (c) falsifying GRANT's federal individual income tax returns and falsifying BIE's federal income tax returns to conceal the scheme.

### Manner and Means of the Conspiracy

4.     It was part of the conspiracy that the defendants used their ICGJC leadership positions to take and divert to GRANT millions of dollars belonging to the ICGJC and its members for GRANT's personal use and benefit.

5.     It was further part of the conspiracy that the defendants and their co-conspirators employed a variety of methods to carry out the scheme to defraud the IRS, including the manner and means set forth below:

### BIE Scheme

6.     It was further part of the conspiracy that GRANT and WARRINGTON created BIE, at least in part, in order to portray GRANT as an entertainment industry mogul whose wealth was derived from his success in the industry and thereby conceal from ICGJC members that his lifestyle was supported entirely by the ICGJC and member donations.

7.     It was further part of the conspiracy that GRANT, WARRINGTON, and their co-conspirators transferred large sums of money, belonging to the ICGJC, to GRANT and WARRINGTON's private company, BIE.   BIE conducted

virtually no legitimate business and was funded almost exclusively by money taken from the ICGJC.   In total, between January 2007 and December 2015, GRANT and WARRINGTON caused the ICGJC to transfer approximately $1,038,000.00 from the ICGJC to BIE.

8.    It was further part of the conspiracy that GRANT, WARRINGTON and their co-conspirators falsely characterized some of these transactions from the ICGJC to BIE as "loans," to conceal this diversion of money to BIE.

9.    It was further part of the conspiracy that GRANT, WARRINGTON and their co-conspirators used the diverted funds referenced in paragraph 7, as well as approximately $1,350,000.00 of other ICGJC funds, to pay BIE's expenses, including goods and services provided to BIE by third-party vendors, office space, equipment rental, telephone service, and utilities, among others.

10.    It was further part of the conspiracy that GRANT, as a result of the BIE scheme, received approximately $2,388,000.00 in income that belonged to the ICGJC and its members.

11.    It was further part of the conspiracy that GRANT and WARRINGTON concealed the income derived from the BIE scheme described in paragraphs 6 through 10 on GRANT's and BIE's federal income tax returns thus evading the assessment of a substantial amount of taxes due and owing to the United States.

**The Personal Expenditure Scheme**

12.     It was further part of the conspiracy that GRANT and WARRINGTON took and diverted money belonging to the ICGJC for GRANT's personal use and benefit and the benefit and use of his family.   For example, GRANT and WARRINGTON took and used the ICGJC's money to:

a.     obtain and purchase high-end luxury items, including men and women's luxury clothing, women's handbags, women's shoes, electronic products, and home furnishings;

b.     purchase and lease real estate for GRANT's exclusive use and benefit and the benefit and use of his family;

c.     purchase and lease luxury vehicles, including a 2010 Mercedes Sprinter Van and 2014 Kawasaki Recreation Vehicle for GRANT's exclusive use and benefit and the benefit and use of his family;

d.     purchase lodging, transportation costs, and other expenses for recreational activities, including expenses related to stays at Disneyland, Florida, for GRANT's exclusive use and benefit and the use and benefit of his family; and

e.     pay expenses related to the education of some of GRANT's minor children at a private school in New Jersey, including daily transportation to the school in a chauffeured Mercedes Benz paid for with funds from an ICGJC bank account.

13.     It was further part of the conspiracy that GRANT, WARRINGTON and their co-conspirators caused the ICGJC to pay for the expenses described in the Paragraph 12 above.

14.     It was further part of the conspiracy that GRANT's name not be used on leases, rental agreements, or other financial documents associated with the scheme.   Instead, it was further part of the conspiracy that names of their co-conspirators be used on numerous leases, rental agreements or other financial documents associated with the scheme.

15.     It was further part of the conspiracy that GRANT, as a result of the Personal Expenditure scheme, received approximately $2,938,524.37 in income from the ICGJC and its members.

16.     It was further part of the conspiracy that GRANT and WARRINGTON concealed the income derived from the Personal Expenditure scheme described in paragraphs 12 through 15 on GRANT's federal individual income tax returns thus evading the assessment of a substantial amount of taxes due and owing to the United States.

**The Rent Scheme**

17.     It was further part of the conspiracy that GRANT and WARRINGTON caused the ICGJC to pay the mortgage on a residential home located in New Jersey (the "New Jersey Home").

6

18.     It was further part of the conspiracy that a co-conspirator not named herein ("CC-1") and his family rented the New Jersey Home.

19.     It was further part of the conspiracy that GRANT collected and received monthly rental payments from CC-1 and his family related to CC-1's occupancy of the New Jersey Home.

20.     It was further part of the conspiracy that GRANT kept the rental payments for himself.

21.     It was further part of the conspiracy that GRANT, as a result of the rent scheme described in paragraphs 17 through 20, received approximately $65,600.00 in rental income.

22.     It was further part of the conspiracy that GRANT and WARRINGTON concealed the income derived from the rent scheme described in Paragraphs 17 through 21 on GRANT's federal individual income tax returns thus evading the assessment of a substantial amount of taxes due and owing to the United States.

## Overt Acts

23.     In furtherance of the conspiracy and in order to effect the object thereof, defendants GRANT, WARRINGTON, and their co-conspirators knowingly committed and caused to be committed the following overt acts, among others, in the District of New Jersey and elsewhere:

## BIE Scheme

a.     On or about January 7, 2008, GRANT and WARRINGTON wrote or directed to be written check number 7537 from ICGJC's bank account in the amount of $26,755.60 to be paid to BIE.

b.     On or about January 7, 2008, GRANT and WARRINGTON deposited or caused to be deposited ICGJC bank check number 7537 into BIE's bank account.

c.     On or about February 2, 2009, GRANT and WARRINGTON wrote or directed to be written two cashier's checks totaling approximately $2,251.75 to be paid to the management company/property owner of BIE's Beverly Hills, California location.

d.      On or about June 2, 2009, GRANT and WARRINGTON wrote or directed to be written check number 1211 from ICGJC's bank account in the amount of $30,000 to be paid to BIE.

e.     On or about June 2, 2009, GRANT and WARRINGTON deposited or caused to be deposited ICGJC bank check number 1211 into BIE's

8

bank account.

f.     On or about May 4, 2010, GRANT and WARRINGTON wrote or directed to be written check number 610001 from ICGJC's bank account in the amount of $ 22,216.65 to be paid to BIE.

g.     On May 4, 2010, GRANT and WARRINGTON deposited or caused to be deposited ICGJC bank check number 610001 into BIE's bank account.

h.     On or about November 19, 2013, GRANT and WARRINGTON wrote or directed to be written two cashier's checks totaling approximately $17,500.00 to be paid to the management company of BIE's Upper Manhattan location.

i.     On or about June 30, 2014, GRANT and WARRINGTON wrote or directed to be written check number 1228 from ICGJC's bank account in the amount of $10,187.92 to be paid to the management company of BIE's offices located on the Avenue of the Americas in New York City.

j.     On or about May 12, 2015, GRANT and WARRINGTON wrote or directed to be written check number 1299 from ICGJC's bank account in the amount of $34,811.66 to be paid to the management company of BIE's Hackensack, New Jersey location.

**The Personal Expenditure Scheme**

k.     On or about February 11, 2009, GRANT, using an ICGJC

bank debit card, purchased or caused to be purchased a king size bed, a desk, a wall unit and other items, costing approximately $4,112.08, from a home-furnishing store in Cherry Hill, New Jersey, and directed the merchandise be shipped to a property in Philadelphia, Pennsylvania that was under GRANT's exclusive use and control.

l.      On or about October 8, 2009, GRANT, using an ICGJC bank debit card in his name, purchased or caused to be purchased lamps and other items, costing approximately $1,386.72, from a home-furnishing store in Cherry Hill, New Jersey, and directed the merchandise be shipped to him at a property in Philadelphia, Pennsylvania that was under GRANT's exclusive use and control.

m.      On or about November 5, 2009, GRANT, using an ICGJC bank debit card in his name, purchased or caused to be purchased a MAC Book Pro Apple computer, costing approximately $ 2,673.93, from an Apple Store in Paramus, New Jersey.

n.      On or about May 29, 2010, GRANT, using an ICGJC debit card in his name, purchased or caused to be purchased merchandise, costing approximately $4,654.50, from Louis Vuitton in Paramus New Jersey.

o.      From on or about July 12, 2010, through on or about July 18, 2010, GRANT, using an ICGJC debit card in his name, caused the ICGJC to incur expenses and pay approximately $14,000.00 for a vacation to

Disneyland Resorts in Florida for GRANT, six of his children, and their mother.

p.      On or about November 17, 2010, GRANT, using an ICGJC debit card in his name, purchased men's shoes and other luxury items, costing approximately $1,354.30, from Gucci in Paramus, New Jersey.

q.      On June 16, 2011, GRANT, using an ICGJC debit card in his name, purchased or caused to be purchased ten dining room table chairs and other items, costing approximately $6,762, from a store in Florida, and directed the merchandise be shipped to him at a property in Windermere, Florida that was under GRANT's exclusive use and control.

r.      On or about November 30, 2011, GRANT, using an ICGJC bank debit card in his name, purchased or caused to be purchased sofas, a bar and bar stools, lounge chairs and other items, costing approximately $7,796.88, from a home-furnishing store in Cherry Hill, New Jersey, and directed the merchandise be shipped to him at a property in New York, New York that was under GRANT's exclusive use and control.

s.      On or about December 1, 2011, GRANT, using an ICGJC bank debit card in his name, purchased or caused to be purchased a king size bed, a marble bar, a fireplace mantel and firebox and other items, costing approximately $7,447.05, from a store in Paramus, New Jersey, and directed the merchandise be shipped to him at a property in New York, New York that was under GRANT's exclusive use and control.

t.      On or about December 15, 2011, GRANT, using an ICGJC bank debit card in his name, purchased or caused to be purchased two women's handbags, costing approximately $6,730.30, from Gucci in Paramus, New Jersey.

u.      On March 28, 2012, GRANT, using an ICGJC bank debit card in his name, purchased or caused to be purchased men's pants, various items of women's clothing, and two men's sports coats, costing approximately $11,700.00, from Neiman Marcus in Paramus, New Jersey.

v.      On or about June 11, 2012, GRANT, using an ICGJC bank debit card in his name, purchased or caused to be purchased, among other things, an iMac computer, costing approximately $1,999.00, from the Apple Store in Paramus, New Jersey.

w.      From on or about July 7, 2012 to on or about July 17, 2012, GRANT, using an ICGJC debit card in his name, caused the ICGJC to incur expenses and pay approximately $32,172.00 for a vacation to Disneyland Resorts in Florida, including payment for two rooms at the Animal Kingdom Resort, for GRANT, six of his children, their mother, and two other female minors.

**Cars**

x.      On or about April 19, 2010, GRANT and WARRINGTON wrote or directed to be written cashier's check number 9805903556 from the

ICGJC bank account in the amount of $51,289.00 for the purchase of a 2010 new Mercedes passenger Sprinter van from Prestige Motors, Inc., Paramus, New Jersey for GRANT and his family's personal use.

    y.  On or about June 25, 2014, GRANT, using an ICGJC bank debit card in his name, purchased or caused to be purchased a 2014 Green Kawasaki Recreational Utility vehicle ("RUV") for approximately $18,941.64 from a Suzuki dealership in Florida.

    z.  On or about 25, 2014, at the time of the purchase described above in paragraph 23, subsection y, GRANT and his family were vacationing at a "Dude Ranch" in or near Lake Wales, Florida.   GRANT purchased the RUV for his exclusive use and control and the use and control of his family while they stayed at the "Dude Ranch."

**Real Estate**

    aa.  From at least in or about April 2002 through in or about December 2015, GRANT leased 17 Lewis Street, Hackensack, New Jersey for his exclusive use and control.   The rent was approximately $3,800.00 per month.

    bb.  On or about March 6, 2013, GRANT made or caused to be made cashier's check number 1400904880 from the ICGJC bank account in the amount of $3,800.00 to be paid to the property owner of 17 Lewis Street.

    cc.  From at least in or about March 2006 through in or about

December 2015, GRANT leased 277 Prospect Ave, #10E, Hackensack, New Jersey for his exclusive use and control.   The rent was approximately $2,300.00 per month.

      dd.   On or about January 18, 2014, GRANT made or caused to be made cashier's check number 81457778-2 from the ICGJC bank account in the amount of $2,300.00 to be paid to the property owner of 277 Prospect Avenue.

      ee.   From at least in or about January 1, 2009 through in or about December 2015, GRANT leased a duplex penthouse apartment at 117 North 15th Street, Apt 2502, Philadelphia, Pennsylvania, for his exclusive use and control.   The rent was approximately $3,500 per month.

      ff.   On or about January 5, 2010, GRANT made or caused to be made bank check number 8446 from the ICGJC bank account in the amount of $3,545.00 to be paid to the management company of the Philadelphia penthouse apartment.

      gg.   From at least in or about March 2010 through in or about December 2015, GRANT leased an estate at 11012 Bridge House Road, Windermere, Florida, for his exclusive use and control.   The rent was between $8,500 and $13,500 per month.

      hh.   On or about April 4, 2014, GRANT made or caused to be made bank check number 1099 from the ICGJC bank account in the amount

of $13,500 to be paid to the management company of the Windermere estate.

      ii.     From at least in or about October 2011 through December 2015, GRANT leased apartment #28C, 400 East 84th Street, New York, New York for his exclusive use and control.   The rent was approximately $17,995.00 to $19,786.00 per month.

      jj.     On or about November 6, 2015, GRANT made or caused to be made check number 1477 from the ICGJC bank account in the amount of $39,722.00 to be paid to the management company of the New York apartment.

**Private School**

      kk.   On or about September 6, 2011, GRANT wrote or directed to be written cashier's check number 1686403452 from ICGJC's bank account in the amount of $30,500.00 to be paid to a private school in Passaic, New Jersey.

      ll.    On or about September 4, 2012, GRANT wrote or directed to be written cashier's check number 1686405119 from ICGJC's bank account in the amount of $10,000.00 to be paid to a private school in Passaic, New Jersey.

      mm.  On or about March 26, 2014, GRANT wrote or directed to be written check number 81495515-2 from ICGJC's bank account in the amount of $5,000.00 to be paid to a private school in Passaic, New Jersey.

**The Rent Scheme**

      nn.   On or about January 30, 2009, GRANT deposited or caused

to be deposited into GRANT's personal bank account Western Union money order number 09-034045352 in the amount of $1,000.00 and to be paid to the order of "Jermaine Grant."

   oo.   On or about September 1, 2011, GRANT deposited or caused to be deposited into GRANT's personal bank account three Western Union money orders totaling approximately $3,000.00. All three money orders were in the amount of $1,000 and to be paid to the order of "Jermaine Grant."

**Tax Returns**

   pp.   On or about April 15, 2008, GRANT caused a Form 1040, United States Individual Income Tax Return for the tax year 2007 to be filed with the IRS on behalf of himself that concealed at least $253,213.25 in taxable income resulting in an additional tax due and owing of approximately $91,732.00 for tax year 2007.

   qq.   On or about April 15, 2009, GRANT caused a Form 1040, United States Individual Income Tax Return for tax year 2008 to be filed with the IRS on behalf of himself that concealed at least $272,476.83 in taxable income resulting in an additional tax due and owing of approximately $95,114.00 for tax year 2008.

   rr.   On or about April 15, 2010, GRANT caused a Form 1040, United States Individual Income Tax Return for tax year 2009 to be filed with the IRS on behalf of himself that concealed at least $324,951.55 in taxable

income resulting in an additional tax due and owing of approximately $113,688.00 for tax year 2009.

ss.    On or about April 15, 2011, GRANT caused a Form 1040, United States Individual Income Tax Return for tax year 2010 to be filed with the IRS on behalf of himself that concealed at least $533,523.57 in taxable income resulting in an additional tax due and owing of approximately $190,470.00 for tax year 2010.

tt.    On or about April 15, 2012, GRANT caused a Form 1040, United States Individual Income Tax Return for tax year 2011 to be filed with the IRS on behalf of himself that concealed at least $607,252.52.00 in taxable income resulting in an additional tax due and owing of approximately $214,997.00 for tax year 2011.

uu.    On or about April 15, 2013, GRANT caused a Form 1040, United States Individual Income Tax Return for tax year 2012 to be filed with the IRS on behalf of himself that concealed at least $826,101.74 in taxable income resulting in an additional tax due and owing of approximately $295,904.00 for tax year 2012.

vv.    On or about April 15, 2014, GRANT caused a Form 1040, United States Individual Income Tax Return for tax year 2013 to be filed with the IRS on behalf of himself that concealed at least $816,885.62 in taxable income resulting in an additional tax due and owing of approximately

$316,995.00 for tax year 2013.

ww.   On or about April 15, 2015, GRANT caused a Form 1040, United States Individual Income Tax Return for tax year 2014 to be filed with the IRS on behalf of himself that concealed at least $850,204.64 in taxable income resulting in an additional tax due and owing of approximately $330,286.00 for tax year 2014.

xx.   On or about April 15, 2016, GRANT caused a Form 1040, United States Individual Income Tax Return for tax year 2015 to be filed with the IRS on behalf of himself that concealed at least $858,310.29 in taxable income resulting in an additional tax due and owing of approximately $333,284.00 for tax year 2015.

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO
(Tax Evasion)

1.   The allegations set forth in Paragraphs 1 and 3 through 23 of Count One of this Indictment are hereby re-alleged as if fully set forth herein.

2.   At all times relevant to this Count, GRANT and WARRINGTON:

a.   used money belonging to the ICGJC and its members to obtain and purchase high-end luxury items for GRANT's exclusive use and benefit and the use and benefit of his family members;

b.   used money belonging to the ICGJC and its members to purchase and lease luxury vehicles for GRANT's exclusive use and benefit and the use and benefit of his family;

c.   used money belonging to the ICGJC and its members to purchase lodging, transportation costs, and other expenses for recreational activities for GRANT's exclusive use and benefit and the use and benefit of his family;

d.   used money belonging to the ICGJC and its members to pay expenses related to the education of GRANT's minor children at a private school in New Jersey.

e.   used rental income belonging to the ICGJC and its members for GRANT's exclusive use and benefit.

f.   failed to report as income on GRANT's individual income tax returns the income he had derived from the ICGJC, as described in this

19

paragraph, thereby causing his returns to understate a substantial amount of income.

3.     On or about April 15, 2012, GRANT caused to be filed with the IRS a Form 1040 for tax year 2011 on behalf of GRANT.   That return stated that GRANT's taxable income for the calendar year 2011 was $6,100.00 and the amount of tax due and owing was $613.00, resulting in a tax refund of $1,947.00.

4.   GRANT knowingly and willfully failed to include on the return approximately $607,252.52 in additional taxable income that GRANT had received in 2011.   With this income, an additional tax of approximately $214,997.00 was due and owing to the United States.

### **The Charge**

5.   On or about April 15, 2012, in Bergen County, in the District of New Jersey and elsewhere, defendant

JERMAINE GRANT

knowingly and willfully attempted to evade and defeat a substantial part of the income tax due and owing to the United States, and aided, abetted, counseled, commanded, induced and procured the attempt to evade and defeat a substantial part of the income tax due and owing to the United States, in that GRANT caused to be filed a false and fraudulent 2011 United States Individual Income Tax Return, Form 1040, on behalf of GRANT, as described in

20

Paragraphs 3 and 4 of this Count, knowing it to be false and fraudulent, as described in Paragraph 4 of this Count.

In violation of Title 26, United States Code, Section 7201 and Title 18, United States Code, Section 2.

## COUNT THREE
(Tax Evasion)

1.   The allegations set forth in Paragraphs 1 and 3 through 23 of Count One and Paragraph 2 of Count Two of this Indictment are hereby re-alleged as if fully set forth herein.

2.   On or about April 15, 2013, GRANT caused to be filed with the IRS a Form 1040 for tax year 2012 on behalf of GRANT.   That return stated that GRANT'S taxable income for the calendar year 2012 was $5,850.00 and the amount of tax due and owing was $588.00, resulting in a tax refund of $1,981.00.

3.   GRANT knowingly and willfully failed to include on the return approximately $826,101.74 in additional taxable income that GRANT had received in 2012.   With this income, an additional tax of approximately $295,904.00 was due and owing to the United States.

### The Charge

4.   On or about April 15, 2013, in Bergen County, in the District of New Jersey and elsewhere, defendant

JERMAINE GRANT

knowingly and willfully attempted to evade and defeat a substantial part of the income tax due and owing to the United States, and aided, abetted, counseled, commanded, induced and procured the attempt to evade and defeat a substantial part of the income tax due and owing to the United States, in that

22

GRANT caused to be filed a false and fraudulent 2012 United States Individual Income Tax Return, Form 1040, on behalf of GRANT, as described in Paragraphs 2 and 3 of this Count, knowing it to be false and fraudulent, as described in Paragraph 3 of this Count.

In violation of Title 26, United States Code, Section 7201 and Title 18, United States Code, Section 2.

## COUNT FOUR
(Tax Evasion)

1.   The allegations set forth in Paragraphs 1 and 3 through 23 of Count One and Paragraph 2 of Count Two of this Indictment are hereby re-alleged as if fully set forth herein.

2.   On or about April 15, 2014, GRANT caused to be filed with the IRS a Form 1040 for tax year 2013 on behalf of GRANT.   That return stated that GRANT'S taxable income for the calendar year 2013 was $0.00 and the amount of tax due and owing was $0.00, resulting in a tax refund of $10,435.00.   This refund included an Earned Income Credit of approximately $6,044.00.

3.   GRANT knowingly and willfully failed to include on the return approximately $816,885.62 in additional taxable income that GRANT had received in 2013.   With this income, an additional tax of approximately $316,995.00 was due and owing to the United States.

## The Charge

4.   On or about April 15, 2014, in Bergen County, in the District of New Jersey and elsewhere, defendant

JERMAINE GRANT

knowingly and willfully attempted to evade and defeat a substantial part of the income tax due and owing to the United States, and aided, abetted, counseled, commanded, induced and procured the attempt to evade and defeat a substantial part of the income tax due and owing to the United States, in that

24

GRANT caused to be filed a false and fraudulent 2013 United States Individual Income Tax Return, Form 1040, on behalf of GRANT, as described in Paragraphs 2 and 3 of this Count, knowing it to be false and fraudulent, as described in Paragraph 3 of this Count.

In violation of Title 26, United States Code, Section 7201 and Title 18, United States Code, Section 2.

25

## **COUNT FIVE**
(Tax Evasion)

1.    The allegations set forth in Paragraphs 1, and 3 through 23 of Count One and Paragraph 2 of Count Two of this Indictment are hereby re-alleged as if fully set forth herein.

2.    On or about May 15, 2015, GRANT caused to be filed with the IRS a Form 1040 for tax year 2014 on behalf of GRANT.   That return stated that GRANT's taxable income for the calendar year 2014 was $0.00 and the amount of tax due and owing was $285.00, resulting in a tax refund of $9,050.00. This refund included an Earned Income Credit of $6,143.00.

3.    GRANT knowingly and willfully failed to include on the return approximately $850,204.64 in additional taxable income that GRANT had received in 2014.   With this income, an additional tax of approximately $330,286.00 was due and owing to the United States.

## **The Charge**

4.    On or about May 15, 2015, in Bergen County, in the District of New Jersey and elsewhere, defendant

JERMAINE GRANT

knowingly and willfully attempted to evade and defeat a substantial part of the income tax due and owing to the United States, and aided, abetted, counseled, commanded, induced and procured the attempt to evade and defeat a substantial part of the income tax due and owing to the United States, in that

26

GRANT caused to be filed a false and fraudulent 2014 United States Individual Income Tax Return, Form 1040, on behalf of GRANT, as described in Paragraphs 2 and 3 of this Count, knowing it to be false and fraudulent, as described in Paragraph 3 of this Count.

In violation of Title 26, United States Code, Section 7201 and Title 18, United States Code, Section 2.

27

**COUNT SIX**
(Tax Evasion)

1.   The allegations set forth in Paragraphs 1 and 3 through 23 of Count One and Paragraph 2 of Count Two of this Indictment are hereby re-alleged as if fully set forth herein.

2.   On or about April 15, 2016, GRANT caused to be filed with the IRS a Form 1040 for tax year 2015 on behalf of GRANT.   That return stated that GRANT's taxable income for the calendar year 2015 was $0.00 and the amount of tax due and owing was $0.00, resulting in a tax refund of $10,587.00.   This refund included an Earned Income Credit of $6,242.00.

3.   GRANT knowingly and willfully failed to include on the return approximately $858,310.29 in additional taxable income that GRANT had received in 2015.   With this income, an additional tax of approximately $333,284.00 was due and owing to the United States.

**The Charge**

4.   On or about April 15, 2016, in Bergen County, in the District of New Jersey and elsewhere, defendant

JERMAINE GRANT

knowingly and willfully attempted to evade and defeat a substantial part of the income tax due and owing to the United States, and aided, abetted, counseled, commanded, induced and procured the attempt to evade and defeat a substantial part of the income tax due and owing to the United States, in that

28

GRANT caused to be filed a false and fraudulent 2015 United States Individual Income Tax Return, Form 1040, on behalf of GRANT, as described in Paragraphs 2 and 3 of this Count, knowing it to be false and fraudulent, as described in Paragraph 3 of this Count.

In violation of Title 26, United States Code, Section 7201 and Title 18, United States Code, Section 2.

A TRUE BILL

FOREPERSON

CRAIG CARPENITO
United States Attorney
District of New Jersey

29

**CASE NUMBER:** 18-cr-179-WJM

# United States District Court
## District of New Jersey

## UNITED STATES OF AMERICA

v.

## JERMAINE GRANT and
## LINCOLN WARRINGTON

# INDICTMENT FOR

**Title 18, United States Code, Section 371**
**Title 26, United States Code, Section 7201**

**A True Bill,**

_____
**Foreperson**

CRAIG CARPENITO
UNITED STATES ATTORNEY
FOR THE DISTRICT OF NEW JERSEY

MARGARET ANN MAHONEY
ASSISTANT U.S. ATTORNEY
NEWARK, NEW JERSEY
973.645.2761