## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | Crim. No. 18-179 (WJM) |
| **v.** | |
| **LINCOLN WARRINGTON,** | **OPINION** |
| **Defendant.** | |

**WILLIAM J. MARTINI, U.S.D.J.:**

This matter comes before the Court on Defendant Lincoln Warrington's (the "Defendant") motion for compassionate release and reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) in light of the COVID-19 pandemic. ECF No. 137. For the reasons set forth below, the motion is **DENIED**.

## I.   BACKGROUND

On March 20, 2019, Defendant pleaded guilty to Count One of the Indictment for conspiracy to defraud the United States stemming from Defendant's involvement in a scheme which, among other things, improperly used tens of millions of dollars in contributions made to a religious organization for the personal benefit of co-defendant Jermaine Grant. ECF No. 1. On January 28, 2020, the Court sentenced Defendant to a term of imprisonment of twelve (12) months and one (1) day. ECF No. 112. In light of the COVID-19 pandemic, and with the consent of the United States, the Court twice adjourned Defendant's surrender date, and Defendant ultimately surrendered on September 9, 2020. ECF Nos. 124, 128.

Defendant is currently incarcerated at FCI Fort Dix and is projected to be released from prison on July 16, 2021. Defendant, a fifty (50) year old male, states that he suffers from obesity and hypertension, and is therefore at a higher risk of contracting a serious illness due to COVID-19. Def. Br. at 9. Defendant, who is 6 feet and one inch tall and weighs two hundred and fifty-two (252) pounds, has a BMI of 33.2 and a blood pressure of 126/84. *See* Opp. Br., Ex. A, ECF No. 139; *Adult BMI Calculator*, CDC, https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html (last visited Dec. 15, 2020). Due to his BMI, Defendant is considered "obese," while his blood pressure is considered elevated and within the range of stage one hypertension.[1] *Id.*; *see Understanding Blood Pressure Readings*, American Heart Association,   https://www.heart.org/en/health-topics/high-bloodpressure/understanding-

---

[1] Defendant's most recent medical records do not reflect an actual hypertension diagnosis.

blood-pressure-readings (last visited Dec. 15, 2020). Defendant does not take any medications for either condition.

On October 17, 2020, Defendant requested in writing that the warden of FCI Fort Dix move the Court on his behalf for compassionate release or to be transferred to home confinement. Def. Br., Ex. A. On October 30, 2020, the warden of FCI Fort Dix responded to Defendant's request, denying Defendant's request to be transferred to home confinement, and instructing Defendant to resubmit his request for compassionate release. *Id.* Rather than resubmit his request for compassionate release to the warden, Defendant filed the instant motion with the Court on November 17, 2020.

## II.   DISCUSSION

Under the First Step Act, the Court may grant a defendant's motion for compassionate release or a reduction in his sentence if the defendant shows that (1) he has exhausted all administrative remedies prior to seeking judicial review; and (2) compelling and extraordinary reasons exist to justify such release. *United States v. Sellers*, Crim. No. 10-434 (RMB), 2020 WL 1972862, at *1 (D.N.J. Apr. 24, 2020). Here, the parties do not dispute that Defendant has exhausted his administrative remedies: Defendant initially requested a reduction in his sentence based on his concerns over COVID-19 on October, 17, 2020, and filed the instant motion on November 17, 2020. Because more than thirty days have passed since the request for a reduction in sentence, the Court may properly consider Defendant's motion. The Court therefore focuses its analysis on the merits of Defendant's motion.

In deciding a defendant's motion for compassionate release, the Court considers whether "(1) extraordinary and compelling reasons warrant a reduction, (2) the reduction would be consistent with applicable policy statements issued by the Sentencing Commission, and (3) the applicable sentencing factors under [18 U.S.C.] § 3553(a) warrant a reduction." *United States v. Berry*, Crim. No. 10-051-1 (NLH), 2020 WL 4035457, at *2 (D.N.J. July 17, 2020). Defendant argues that he should be released due to the outbreak of COVID-19, his medical conditions, and the conditions of his confinement at FCI Fort Dix. The Government opposes the request, arguing that Defendant's medical conditions do not warrant a reduction in his sentence, particularly in light of the percentage of Defendant's sentence that remains unserved. The Court agrees with the Government and will deny the Defendant's motion.

### A.   Whether Compelling and Extraordinary Reasons Exist

The U.S. Sentencing Commission's Policy Statement regarding the reduction of a defendant's sentence, which provides useful guidance for the Court in assessing the Defendant's eligibility for compassionate release, identifies several non-exhaustive considerations that may support a finding of "compelling and extraordinary" reasons sufficient to warrant such reduction, including, as relevant here, a defendant's medical condition. U.S.S.G. § 1B1.13, Application Note 1. In the context of the COVID-19 pandemic, the inquiry into whether a defendant's medical conditions establish "compelling

and extraordinary reasons" warranting a reduction in his sentence "has two components: (a) identification of a medical condition that renders the defendant particularly vulnerable to serious consequences if infected with COVID-19; and (b) the likelihood of COVID-19 infection, with particular reference to conditions in the institution in which the defendant is incarcerated." *United States v. Moore*, No. 19-101 (KM), 2020 WL 4282747, at *3 (D.N.J. July 27, 2020).

Here, Defendant states that he suffers from obesity and hypertension. Although obesity and hypertension are risk factors for serious illness caused by COVID-19, neither condition appears to currently place Defendant at significant medical risk. Defendant's BMI and recent blood pressure readings indicate that he is at the low end of the spectrum for both obesity and hypertension, respectively, and neither condition is at such a level as to require any medical treatment. Defendant is only fifty years old, is in otherwise good health, and there is no indication that he is unable to provide self-care or access medical treatment, if necessary, to manage his conditions. Courts in this district have regularly denied motions for compassionate release in similar circumstances, finding that obesity and hypertension fail to constitute "compelling and extraordinary reasons" warranting release or reduction in sentence. *United States v. Dunich-Kolb*, Crim. No. 14-150 (KM), 2020 WL 6537386, at *6 (D.N.J. Nov. 5, 2020) ("Even actual obesity, not accompanied by other risk factors (such as advanced age or COPD), has regularly been rejected as grounds for compassionate release.") (compiling cases); *see also, e.g.*, *United States v. Windley*, Crim. No. 19-363, 2020 WL 6938336, at *3 (D.N.J. Nov. 25, 2020) (denying request for compassionate release despite BMI of 39); *United States v. Tull*, Crim. No. 15-622 (SDW), 2020 WL 6336180, at *3 (D.N.J. Oct. 29, 2020) (finding no compelling and extraordinary reasons warranting release where defendant was "obese, but not severely so" and where hypertension was "well controlled" with medication); *United States v. Lillo*, Crim. Nos. 15-43 & 15-489 (KM) (Nov. 17, 2020), slip. op. (denying compassionate release motion of 50 year old inmate based on obesity and hypertension where conditions did not require medical treatment and were not on "severe end of the spectrum").[2]

Neither do the previous conditions of Defendant's imprisonment justify Defendant's release. While it is regrettable that Defendant was placed in a designated unit for mandatory quarantine for an extended period of time, this procedure as applied in this case was a safety measure, not a punishment, meant to prevent or reduce the spread of COVID-19 at FCI Fort Dix. There is no basis for the Court to conclude that the mandatory

---

[2] The Court is aware and acknowledges the increasing numbers of COVID-19 cases at correctional facilities across the country, including FCI Fort Dix. However, the fact that COVID-19 may be present within any given facility, and the associated risk that a particular defendant may become infected with COVID-19 as a result thereof, are insufficient, standing alone, to warrant compassionate release. *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). As explained herein, Defendant's medical conditions and consideration of the Section 3553(a) sentencing factors counsel against granting compassionate release in this case.

quarantine process as implemented at FCI Fort Dix justifies compassionate release or a reduction in Defendant's sentence.[3]

The Court recognizes, and is sympathetic to, Defendant's concerns, and the broader concerns with respect to the spread of COVID-19 in correctional facilities. Nonetheless, the Court concludes that Defendant has not presented "compelling and extraordinary reasons" warranting compassionate release or a reduction in Defendant's sentence.

### B.  Applicable 18 U.S.C. § 3553(a) Factors

Even if the Court were to conclude that Defendant has presented sufficiently compelling and extraordinary reasons to warrant compassionate release, consideration of the applicable sentencing factors under 18 U.S.C. § 3553(a) weighs against a reduction in Defendant's sentence. Although the Defendant's offenses were nonviolent in nature, they were serious: Defendant was intimately involved in a conspiracy to use millions of dollars of charitable religious donations that were entrusted to him for personal gain and without reporting any of that income to the United States for tax purposes. Defendant has, as of today, served barely 25% of his 12 month and 1-day sentence, which was already on the low end of the stipulated range agreed to by the parties as part of the plea agreement. Releasing Defendant now would simply fail to either recognize the seriousness of the offense for which Defendant is incarcerated or promote respect for the law. *See Tull*, 2020 WL 6336180, at *3 (finding that releasing Defendant less than one-fourth of the way through her sentence "for crimes that involved the fraudulent misuse of over $19,000,000.00" would fail to "'reflect the seriousness of the offense', 'promote respect for the law', or 'provide just punishment for the offense'" (quoting 18 U.S.C. § 3553(a)(2)(A)).

---

[3] This situation is entirely different to that at issue at *United States v. Scparta*, -- F.3d --, 2020 WL 1910481 (S.D.N.Y. Apr. 20, 2020), cited by the Defendant.  In *Scparta*, the BOP had *already* determined that the defendant in that case should have been released to home confinement but refused to allow him to self-quarantine at home, and, as a result, the defendant was stuck in a continually resetting quarantine period while awaiting his approved release. *Id.* at *1. The facts of *Scparta* stand in stark contrast to those present here, where Defendant was quarantined at the *beginning* of his sentence as a precautionary safety measure.

### III.    CONCLUSION

For the reasons set forth above, Defendant's motion for compassionate release and a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), ECF No. 137, is **DENIED**. An appropriate Order follows.

*/s/ William J. Martini*

**WILLIAM J. MARTINI, U.S.D.J.**

**Date: December 16, 2020**