# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | Crim. No. 18-179 (WJM) |
| v. | |
| **LINCOLN WARRINGTON,** | **OPINION** |
| Defendant. | |

### WILLIAM J. MARTINI, U.S.D.J.:

    This matter comes before the Court on Defendant Lincoln Warrington's (the "<u>Defendant</u>") second motion for compassionate release and reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) in light of the COVID-19 pandemic. ECF No. 137. For the reasons set forth below, the motion is **DENIED**.

## I.    BACKGROUND

    The facts and procedural history of this case were set forth in the Court's December 16, 2020 opinion denying Defendant's first motion for compassionate release, familiarity with which is assumed. *See* ECF No. 141.

    Since entry of the Court's earlier opinion denying Defendant's request for compassionate release, only two facts have changed. First, the most recent medical records dated February 4, 2021 indicate that Defendant's blood pressure, which had previously been within the range of stage one hypertension at 126/84, has decreased to 120/71, which is considered "elevated" but not hypertensive. *See* Opp., Ex. C at 2; *Understanding Blood Pressure Readings*, American Heart Association, https://www.heart.org/en/health-topics/high-bloodpressure/understanding-blood-pressure-readings (last visited March 4, 2021). Second, the conditions at FCI Fort Dix with respect to the COVID-19 pandemic have worsened considerably. Specifically, FCI Fort Dix has now reported at least one inmate death and continues to see among the highest rates of infection of any BOP facility in the country, with 40 inmates and 39 staff testing positive as of the time of this writing. *COVID-19: Coronavirus*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited March 4, 2021).

    On January 4, 2021, just under three weeks after the Court denied Defendant's first motion for compassionate release, Defendant wrote to the warden of FCI Fort Dix "renewing" his request to "be transferred to serve the remainder of his sentence under conditions of home confinement, pursuant to 18 U.S.C. § 3624(c)(2) ("Release of a Prisoner"), as amended by Section 12003(b)(2) of the CARES Act." Mot., Ex. A., ECF No. 145. On January 29, 2021, Defendant submitted a second request to the warden of FCI Fort Dix, this time "renew[ing] [his] application for compassionate release . . . pursuant to

18 U.S.C. § 3582(c)(1)(A)." Reply, Ex. A, ECF No. 148. It is unclear whether the warden of FCI Fort Dix ever formally responded to either of Defendant's requests.

## II. DISCUSSION

Under the First Step Act, the Court may grant a defendant's motion for compassionate release or a reduction in his sentence if the defendant shows that (1) he has exhausted all administrative remedies prior to seeking judicial review; and (2) compelling and extraordinary reasons exist to justify such release. *United States v. Sellers*, Crim. No. 10-434 (RMB), 2020 WL 1972862, at *1 (D.N.J. Apr. 24, 2020). Here, the parties dispute whether Defendant has satisfied either of the elements required to justify compassionate release. The Court therefore addresses each requirement in turn.

### A. Exhaustion of Administrative Remedies

Unlike with Defendant's first motion, there is some disagreement over whether Defendant has properly exhausted his administrative remedies. The Court may not properly consider a defendant's request for compassionate release until such defendant has exhausted their administrative remedies. *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). Pursuant to 18 U.S.C. § 3582(c)(1)(A), the Court may only modify a defendant's term of imprisonment on the defendant's own motion if either "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or at least thirty (30) days have lapsed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C., § 3582(c)(1)(A).

Here, Defendant filed the instant motion on February 3, 2021, exactly 30 days after sending his request to the warden of FCI Fort Dix to "serve the remainder of his sentence under conditions of home confinement, pursuant to 18 U.S.C. § 3624(c)(2) ("Release of a Prisoner"), as amended by Section 12003(b)(2) of the CARES Act." The critical question, therefore, is whether Defendant's request to be transferred to home confinement pursuant to 18 U.S.C. § 3624(c)(2) is sufficient to exhaust the administrative remedies available to Defendant for purposes of seeking compassionate release under Section 3582(c)(1)(A). In urging the Court to answer in the affirmative, Defendant relies primarily on a recent opinion from the Eastern District of Pennsylvania. In *United States v. Hight*, – F. Supp. 3d –, 2020 WL 5653487 (E.D. Pa. Sept. 23, 2020), the court found that a *pro se* defendant had indeed exhausted administrative remedies for purposes of his motion for compassionate release under Section 3852(c)(1)(A) after requesting a transfer to home confinement under the CARES Act, noting, among other things, that the considerations and factors relevant in deciding whether to grant a defendant's request under either statute are similar, and that it was unreasonable to assume that a warden at a BOP facility would grant a request for compassionate release after denying a request for transfer to home confinement. *Id.* at *4-5. The Court also expressed that it was "especially wary of imposing an overly-restrictive interpretation of the exhaustion requirement on defendants acting *pro se*, who might reasonably understand the term 'sentence reduction' to include transfer to home confinement." *Id.* at *5.

The Court finds *Hight* to be distinguishable from the facts of this case and declines to adopt its reasoning. First, although Defendant argues that the court's "principal reason for finding exhaustion was that the BOP's refusal to transfer the defendant's custody to home confinement necessarily meant it would have also denied a request that it make a compassionate release motion on defendant's behalf," Reply at 3, it is clear that the *Hight* court was concerned about the fairness of requiring *pro se* defendants to fully understand the interplay and differences between complicated federal statutes. By contrast, Defendant has, at all relevant times, been represented by competent counsel, who submitted each of Defendant's requests to the warden of FCI Fort Dix on his behalf. The same concerns animating the district court's decision in *Hight* are therefore not applicable.

Second, and perhaps more importantly, courts in this District have routinely noted the important differences between Sections 3624(c)(2) and 3582(c)(1)(A). The former, as amended by the CARES Act, broadens the discretion of the director of the Bureau of Prisons in reviewing whether a particular prisoner should be permitted to serve the remainder of their sentence in home confinement. In other words, Section 3624(c)(2) "does not empower a district court to transfer an inmate to home confinement; rather, that decision rests solely within the discretion of the BOP." *United States v. Calabretta*, 2020 WL 6055441, at *4 (Oct. 14, 2020). That decision with respect to the *manner* in which a defendant may serve their sentence, over which the Court has no jurisdiction, "is separate and distinct from the compassionate release provision under Section 3582(c)." *United States v. Viteri*, 19-cr-44 (FLW), slip op. at 4 (D.N.J. Apr. 4, 2020); *see also id.* (same); *United States v. Dunish-Kolb*, Crim No. 14-150 (KM), 2020 WL 6537386, at *12 (D.N.J. Nov. 5, 2020) (finding that "the BOP has the first and last word" on requests for transfer to home confinement pursuant to Section 3624(c) because "[t]he statute does not grant the district court authority to modify the sentence in that manner, and a district court has no general authority to dictate the place of confinement as such"). Under Section 3582(c), the district court may reduce a defendant's sentence itself, and order an immediate compassionate release. *See* 18 U.S.C. § 3582(c). In light of the differences between these statutes, both in terms of the authority conferred thereby as well as the remedies available thereunder, the Court cannot conclude that Defendant's January 4, 2021 request to the warden of FCI Fort Dix seeking transfer to home confinement pursuant to 18 U.S.C. § 3624(c)(2) is sufficient to exhaust his administrative remedies with respect to this motion before this Court seeking compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).[1]

Defendant further argues that even if he has not exhausted his administrative remedies with respect to his January 4, 2021 request for home confinement, he has effectively corrected that error by specifically seeking a reduction in sentence pursuant

---

[1] This conclusion comports with the decisions of courts in other districts as well. *See, e.g.*, *United States v. Collins*, No. 14-cr-30038, 2021 WL 238859, at *4 (C.D. Ill. Jan. 25, 2021); *United States v. Vega*, 3:18-cr-149-J-34JBT, 2020 WL 6449321, at *1 (M.D. Fla. Nov. 3, 2020); *United States v. Deal*, No. 4:18-cr-227, 2020 WL 5604662, at *2-3 (S.D. Ga. Sept. 18, 2020); *United States v. Brown*, Crim. Action No. 13-286, 2020 WL 3292874, at *2 (E.D. La. June 18, 2020); *United States v. Black*, Case No. 2:12-cr-263-3, 2020 WL 2213892, at *2 (S.D. Ohio May 7, 2020).

Section 3582(c) in his January 29, 2021 letter. Reply at 3. Although Defendant recognizes that thirty days had not yet passed since his January 29, 2021 letter, he argues that this Court can simply avoid the exhaustion issue altogether by waiting until the thirtieth day after Defendant sent his letter before issuing an opinion. *Id.* The Court disagrees. "Section 3582(c)(1)(A) unambiguously instructs that a defendant can only bring a motion to court '*after* [he] has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier.'" *United States v. Epstein*, Crim. Action No. 14-287 (FLW), 2020 WL 1808616, at *1 (Apr. 9, 2020) (alterations in original) (emphasis added); *see also United States v. Raia*, 954 F.3d 594, 595 (3d Cir. 2020) ("But before they [request compassionate release], defendants must at least ask the Bureau of Prisons (BOP) to do so on their behalf and given BOP thirty days to respond."). The statutory exhaustion requirement is mandatory and leaves no room for judicially created exceptions. *Epstein*, 2020 WL 1808616, at *1; *Raia*, 954 F.3d at 596-97.

Section 3582(c) requires Defendant to have fully exhausted his administrative remedies prior to seeking relief on his own in this Court, and because Defendant has failed to do so, his Motion must be denied.

### B. Whether Compelling and Extraordinary Reasons Justify a Reduction in Sentence

Because Defendant has not exhausted his administrative remedies, the Court need not decide the merits of Defendant's Motion. However, in the interests of time, and because the statutory exhaustion requirements, though mandatory, have not been found to be jurisdictional in nature, the Court notes that Defendant's Motion would be denied on the merits as well. In deciding a defendant's motion for compassionate release, the Court considers whether "(1) extraordinary and compelling reasons warrant a reduction, (2) the reduction would be consistent with applicable policy statements issued by the Sentencing Commission,[2] and (3) the applicable sentencing factors under [18 U.S.C.] § 3553(a) warrant a reduction." *United States v. Berry*, Crim. No. 10-051-1 (NLH), 2020 WL 4035457, at *2 (D.N.J. July 17, 2020). As with his first motion, Defendant argues that he should be released due to the outbreak of COVID-19, his medical conditions, and the conditions of his confinement at FCI Fort Dix. Similarly, as before, the Government opposes the request, arguing that Defendant's medical conditions do not warrant a reduction in his sentence, particularly in light of the percentage of Defendant's sentence

---

[2] The applicable policy statements of the Sentencing Commission parallel the "extraordinary and compelling reasons" requirement of Section 3582(c)(1)(A), and further require that the defendant not pose a danger to the safety of another person or community within the meaning of 18 U.S.C. § 3142(g). *Dunich-Kolb*, 2020 WL 653786, at *2; U.S.S.G. § 1B1.13(2). To that end, the Court notes that Defendant is a first-time offender convicted of a non-violent crime, and he therefore does not pose a danger to any other person or community. Accordingly, the Court focuses its analysis on the remaining considerations under 18 U.S.C. § 3582(c).

4

that remains unserved. Once again, the Court agrees with the Government and will deny Defendant's motion.

### 1. Existence of Compelling and Extraordinary Reasons

The U.S. Sentencing Commission's Policy Statement regarding the reduction of a defendant's sentence, which provides useful guidance for the Court in assessing the Defendant's eligibility for compassionate release, identifies several non-exhaustive considerations that may support a finding of "compelling and extraordinary" reasons sufficient to warrant such reduction, including, as relevant here, a defendant's medical condition. U.S.S.G. § 1B1.13, Application Note 1. In the context of the COVID-19 pandemic, the inquiry into whether a defendant's medical conditions establish "compelling and extraordinary reasons" warranting a reduction in his sentence "has two components: (a) identification of a medical condition that renders the defendant particularly vulnerable to serious consequences if infected with COVID-19; and (b) the likelihood of COVID-19 infection, with particular reference to conditions in the institution in which the defendant is incarcerated." *United States v. Moore*, No. 19-101 (KM), 2020 WL 4282747, at *3 (D.N.J. July 27, 2020).

Here, with respect to these two components, the change in circumstances since the Court's denial of Defendant's first motion cuts both ways. On the one hand, Defendant's most recent blood pressure readings indicate that his blood pressure is "elevated," but only very slightly so, and is no longer within the range of stage one hypertension.[3] Opp., Ex. C, at 2. As such, it would appear that Defendant is even less at risk of severe illness due to COVID-19 than he was previously, when he claimed to suffer from both obesity and hypertension. As the Court previously noted, obesity, on its own, has been regularly rejected as an extraordinary and compelling reason justifying compassionate release. *United States v. St. Vallier*, Crim. Action No. 07-613 (SDW), 2021 WL 689118, at *4 (D.N.J. Feb. 23, 2021); *United States v. Bell*, No. 15-cr-603 (WJM), 2021 WL 303009, at *2 (D.N.J. Jan. 29, 2021) ("[C]ourts have generally found that obesity, though a high-risk factor, does not constitute extraordinary and compelling circumstances requiring compassionate release, even when the individual suffers from additional medical conditions); *Dunich-Kolb*, 2020 WL 6537386, at *6 ("Even actual obesity, not accompanied by other risk factors (such as advanced age or COPD), has regularly been rejected as grounds for compassionate release.") (compiling cases); *see also, e.g.*, *United States v. Windley*, Crim. No. 19-363, 2020 WL 6938336, at *3 (D.N.J. Nov. 25, 2020) (denying request for compassionate release despite BMI of 39); *United States v. Tull*, Crim. No. 15-622 (SDW), 2020 WL 6336180, at *3 (D.N.J. Oct. 29, 2020) (finding no compelling and extraordinary reasons warranting release where defendant was "obese, but not severely so" and where hypertension was "well controlled" with medication); *United States v. Lillo*, Crim. Nos. 15-43 & 15-489 (KM) (Nov. 17, 2020), slip. op. (denying compassionate release motion of 50 year old inmate based on obesity and hypertension

---

[3] As with Defendant's first motion, there is nothing in the record indicating an actual hypertension diagnosis.

where conditions did not require medical treatment and were not on "severe end of the spectrum"). Defendant's medical conditions do not require any ongoing medical treatment, Defendant remains in otherwise good health, and there is still no indication that he is unable to provide self-care or access medical treatment, if necessary, to manage his conditions.

On the other hand, it is clear, and incredibly concerning, that the measures taken at FCI Fort Dix have failed to adequately protect inmates and staff. Over the last several months, FCI Fort Dix has experienced unquestionably large, and largely uncontrolled, outbreaks of COVID-19. To date, approximately 1,801 inmates and 45 staff members have become infected and have recovered from COVID-19. *See* Federal Bureau of Prisons, *COVID-19 Cases*, https://www.bop.gov/coronavirus/ (last visited March 4, 2021). Recently, one inmate unfortunately died from complications of the virus. *Id.* FCI Fort Dix reports that it still has 40 active infections among inmates and 39 active infections among staff. *Id.* A growing number of courts within and outside of this District have noted these truly alarming statistics in considering a defendant's motion for compassionate release. *See, e.g.*, *United States v. Khair*, Crim. Action No. 15-404, 2020 WL 6689757, at *4 n.4 (D.N.J. Nov. 13, 2020) ("This Court recognizes that conditions at FCI Fort Dix are very concerning. . . . Although this Court recognizes that the rate of COVID-19 infection at federal correctional facilities is in constant flux, the Government's arguments that FCI Fort Dix has successfully controlled the virus are simply not accurate."); *United States v. Beniquez*, 18 Cr. 236 (KPF), 2021 WL 260225, at *4 (Jan. 26, 2021) ("The Court also acknowledges that the conditions at FCI Fort Dix have worsened in recent months."); *United States v. Mowry*, No. 1:18-cr-00015-NT, 2021 WL 265245, at *2 (D. Me. Jan. 26, 2021) (noting wave of outbreaks that have occurred at FCI Fort Dix). The Court joins this growing chorus in expressing its significant concerns about the conditions at FCI Fort Dix.

Although the conditions are FCI Fort Dix make this a close call, the Court cannot conclude that Defendant has established extraordinary and compelling reasons justifying his compassionate release at this time. As noted, Defendant's medical conditions do not require any ongoing treatment, Defendant is in otherwise good health, and Defendant does not appear to be subject to significant medical risk. In addition, notwithstanding the concerns with the conditions at FCI Fort Dix, Courts have not found that these conditions, standing alone, are sufficient to warrant compassionate release in the absence of serious medical conditions. *Compare United States v. Hare*, Crim. No. 18-588 (RMB), 2021 WL 238349, at *3 (D.N.J. Jan. 25, 2021) (denying compassionate release of inmate at FCI Fort Dix who was overweight, had high cholesterol, and suffered from hypertension, sleep apnea, and elevated A1C); *United States v. Suarez*, No. 16-cr-453 (RJS), 2020 WL 7646888, at *3-4 (S.D.N.Y. Dec. 23, 2020) (denying compassionate release of inmate at FCI Fort Dix who suffered from hypertension, high cholesterol, and obesity, and had a history of smoking); *United States v. Gibson*, 2020 WL 7343802, at *4 (E.D.N.Y. Dec. 14, 2020) (denying compassionate release of inmate at FCI Fort Dix who was obese and suffered from hypertension and asthma) *with Khair*, 2020 WL 6689757, at *3 (granting compassionate release of inmate at FCI Fort Dix who suffered from, among other things,

renal cell carcinoma, chronic kidney disease, diabetes, obesity, hypertension); *United States v. Spencer*, – F. Supp. 3d –, 2021 WL 565388, at *6-7 (E.D. Pa. Feb. 12, 2021) (granting release of FCI Fort Dix inmate who tested positive for tuberculosis, and had neurological issues and seizures but was not receiving necessary medical care); *Beniquez*, 2021 WL 260225, at *4 (granting release of FCI Fort Dix inmate who suffered from severe asthma). Defendant's concerns are reasonable, particularly in light of the situation at FCI Fort Dix; however, the general, ever present risk of contracting COVID-19 "cannot independently justify compassionate release." *Raia*, 954 F.3d at 597.[4]

### 2. Applicable 18 U.S.C. § 3553(a) Factors

As with Defendant's first motion, even if the Court were to conclude that Defendant has presented sufficiently compelling and extraordinary reasons to warrant compassionate release, consideration of the applicable sentencing factors under 18 U.S.C. § 3553(a) weighs against a reduction in Defendant's sentence. As the Court noted previously, Defendant's offenses were nonviolent, but they were serious and deserving of the sentence Defendant received.[5] Defendant has served roughly 50% of his sentence, which, as the Court noted in its denial of Defendant's first motion, was already on the low end of the stipulated range agreed to by the parties as part of the plea agreement. Though 50% is obviously greater than the 25% of his sentence Defendant had served when the Court ruled on his first motion for compassionate release, the Court still does not find that compassionate release would reflect the seriousness of Defendant's offense or promote respect for the law. *United States v. Blake*, Crim. No. 19-587, 2020 WL 6779104, *6 (D.N.J. Nov. 18, 2020) ("Finally, [the defendant] has only served approximately 50% of his sentence, which militates against his request."); *United States v. Bernard*, Crim. No. 14-710, 2020 WL 6689798, at *5-6 (D.N.J. Nov. 12, 2020) (same).

---

[4] The Government simultaneously argues that Defendant's medical conditions alone do not justify Defendant's compassionate release and appears to concede that Defendant's obesity may qualify as "extraordinary and compelling reasons" with respect thereto. Opp. at 5 & n3. The Government's concession in light of applicable internal guidance at the Department of Justice does not bind this Court in making its own independent determination of whether there are extraordinary and compelling reasons justifying compassionate release. *United States v. Mell*, Case No. 3:18-cr-00757-BRM, 2021 WL 698506, *4 (D.N.J. Feb. 23, 2021). In light of this possible concession, however, the Court will analyze the applicable Section 3553(a) factors.

[5] Defendant takes issue with the Court's previous finding that Defendant was involved in a conspiracy to use millions of dollars of charitable contributions for personal gain. While it may be the case that Defendant did not personally receive a direct financial benefit from the conspiracy, as the Court noted when it sentenced Defendant, he was "probably most responsible for enabling Mr. Grant to misuse funds of the church" and while he "didn't get all of the financial benefits," he did get "some benefits" including "the prestige of being . . . the church's treasurer, . . . the benefit of a parsonage home . . . and some compensation." Sentencing Tr. 101:16-102:13, ECF No. 120.

### III. CONCLUSION

For the reasons set forth above, Defendant's motion for compassionate release and a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), ECF No. 143, is **DENIED**. An appropriate Order follows.

/s/ *William J. Martini*

**WILLIAM J. MARTINI, U.S.D.J.**

**Date: March 4th, 2021**